# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| MARY F. JOHNSON, | |
| Plaintiff, | No. 16-CV-2026-LTS |
| vs. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | REPORT AND RECOMMENDATION |
| Defendant. | |

The claimant, Mary F. Johnson (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends the Administrative Law Judge (ALJ) erred in determining that she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I.    BACKGROUND

I adopt the facts as set forth in the parties' Joint Statement of Facts and therefore only summarize the pertinent facts here. (Doc. 15). Claimant was born in June 1962 and therefore was 49 years old on the date of the alleged onset of disability and 52 years old at the time of the ALJ's decision. (AR 154-55).[1] Claimant has a high school education, attended college, and obtained an associate's degree. (AR 156-57, 594). Claimant has past relevant work as a home health aide, a housing counselor, an employment clerk, and as a child care provider. (AR 136, 155).

---

[1] "AR" refers to the administrative record below.

On August 7, 2012, claimant protectively filed an application for disability benefits alleging a disability onset date of May 20, 2011. (AR 126, 311, 519). Claimant asserted she was disabled due to degenerative disc disease, obesity, kidney disease, diabetes and high blood pressure. (AR 129).

The Social Security Administration denied claimant's disability application initially and on reconsideration. (AR 284-85, 306-07). On February 6, 2014, an ALJ found claimant was not disabled. (AR 308). On April 15, 2014, the Appeals Council remanded the case, directing the ALJ to hold a new hearing and to take further action to complete the administrative record. (AR 330-32). On September 11, 2014, ALJ Julie K. Bruntz held a second hearing at which claimant and a vocational expert testified. (AR 149-86). On October 20, 2014, the ALJ found claimant was not disabled. (AR 126-37). On February 9, 2016, the Appeals Council affirmed the ALJ's finding. (AR 1-5). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On April 14, 2016, claimant filed a complaint in this Court. (Doc. 3). Between February and April 2017, the parties briefed the issues. (Docs. 16, 19, & 20). On April 4, 2017, the Court deemed this case fully submitted and ready for decision. (Doc. 21). On the same day, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to a United States Magistrate Judge for a Report and Recommendation.

## II.   DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, he "is not only unable to do his previous work but cannot, considering his age, education, and work

experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); 20 C.F.R. § 404.1521(b).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one

of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about

4

the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step.

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since May 20, 2011, the alleged onset date. (AR 129).

At Step Two, the ALJ found that claimant had the severe impairments of "degenerative disc disease; obesity; kidney disease; diabetes; and high blood pressure." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments equaled a presumptively disabling impairment listed in the relevant regulations. (AR 130).

At Step Four, the ALJ found claimant had residual functional capacity to perform sedentary work, with following additional functional limitations that claimant:

> can occasionally climb ramps/stairs but never climb ropes, ladders or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl and can occasionally reach overhead with the right upper extremity.

(*Id.*). Also at Step Four, the ALJ determined that claimant was able to perform past relevant work as a home health aide, a housing counselor, an employment clerk, and as a child care provider. (AR 136). Therefore, the ALJ did not proceed to Step Five, and found claimant was not disabled. (AR 137).

### IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (citations and internal

5

quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817,

6

822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted).).

## V. DISCUSSION

Claimant argues that the ALJ's residual functional capacity determination at Step Four was flawed because: (1) the ALJ failed to evaluate properly the work-related limitations from treating physician Dr. Gennero Sagliocca (Doc. 16, at 5-14); (2) the ALJ failed to evaluate properly the work-related limitations from examining psychologist Dr. Ann Jacobs (Doc. 16, at 15-19); and (3) the ALJ improperly discounted claimant's subjective allegations without identifying inconsistencies in the record as a whole. (Doc. 16, at 19-22). I will address each of these issues in turn.

### A. *The ALJ's Evaluation of Treating Physician's Opinion*

Claimant argues the ALJ erred in failing to give the opinions of treating nephrologist Dr. Gennero Sagliocca sufficient weight. (Doc. 16, at 5-14). Claimant argues the work-related limitations that Dr. Sagliocca identified were materially different from those the ALJ incorporated into claimant's residual functional capacity assessment, that the record supports those limitations, and that the ALJ failed to provide adequate reasons to reject Dr. Sagliocca's opinion. (*Id.*). Claimant argues the Court should reverse the ALJ's decision and remand the case for further consideration of Dr. Sagliocca's opinions and a new assessment of claimant's residual functional capacity. (Doc. 16, at 14).

Dr. Sagliocca is a kidney specialist and saw claimant on only three occasions in the course of fewer than six months, between October 2012 and March 2013. (AR 1013-19, 1097-98). Dr. Sagliocca's records, including laboratory reports, consist of nine pages. Dr. Sagliocca diagnosed claimant as having renal kidney disease. (AR 1015,

7

1097, 1099). On her last visit to Dr. Sagliocca on March 28, 2013, Dr. Sagliocca noted that claimant was "doing fairly well" and had "no other complaints," although she did "complain of some back pain." (AR 1097). During the same visit, claimant asked Dr. Sagliocca "to fill out some disability papers." (*Id.*). Dr. Sagliocca filled out a disability questionnaire form, populated by checkboxes, supplied by claimant's attorney. In response to question 3, asking Dr. Sagliocca to describe claimant's symptoms, it appears that he wrote "back pain" and an indecipherable word. (AR 1099). Dr. Sagliocca did not answer the question: "Have the patient's impairments lasted or can they be expected to last at least twelve months?" (AR 1100). Dr. Sagliocca then checked a number of boxes assessing claimant with the following limitations:

> Sit and stand continuously      45 minutes
> Stand      15 minutes
> In an 8 hour day the patient can:
>      sit 2 hours;
>      stand 45 minutes, and,
>      walk 30 minutes or less
> Needs periods of walking in an 8 hour work day
> Needs to shift positions at will from sitting, standing and walking
> Cannot get through an 8 hours working day without lying down
> While sitting, needs to elevate legs
> Should never lift or carry any weight
> Can only occasionally grasp, turn, and twist objects, engage in fine manipulation, and reach.

(AR 1100-01). When instructed to explain these answers, Dr. Sagliocca left the space blank. (AR 1101). Dr. Sagliocca went on to check boxes indicating claimant could only occasionally bend and twist at the waist and would have "difficulty squatting & stooping." (AR 1102). Finally, Dr. Sagliocca checked the box indicating that claimant would be absent "[m]ore than twice a month" due to her impairments or treatment. (*Id.*).

In considering Dr. Sagliocca's opinion, the ALJ "accorded [it] little evidentiary weight." (AR 135). The ALJ explained the basis for the weight she accorded the opinion. The ALJ noted that Dr. Sagliocca treated claimant for her chronic kidney

8

disease, which Dr. Sagliocca's records showed was stable over the course of the three appointments between October 2012 and March 2013. (*Id.*). The ALJ noted that Dr. Sagliocca's records showed that claimant was "neurologically intact and not endorsing symptoms related to her kidney disease but more attributable to back pain and diabetic neuropathy." (*Id.*). The ALJ noted that during the last visit, Dr. Sagliocca documented that claimant was "doing fairly well." (*Id.*). The ALJ further noted that Dr. Sagliocca's opinion does not "specify which diagnosis/symptoms correspond to specific limitations in functioning." (*Id.*). Ultimately, the ALJ found Dr. Sagliocca's opinion "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion," and that it was inconsistent with claimant's own statements about what she could do. (*Id.*). In contrast, the ALJ gave substantial weight to the opinions of state consulting physicians because the limitations they identified were "well supported with specific references to medical evidence," and were "internally consistent as well as consistent with the evidence as a whole." (AR 136).

An ALJ must determine a claimant's residual functional capacity based on "all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (alterations in original) (citation and internal quotation marks omitted). In determining a claimant's residual functional capacity, it is the ALJ's function to weigh conflicting evidence and to resolve disagreements among physicians. *See Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). A treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence." *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal citation and quotation marks omitted). A treating physician's opinion may be disregarded if it is unsupported by clinical or other

9

data or is contrary to the weight of the remaining evidence in the record. *See Myers v. Colvin*, 721 F.3d 521, 525 (8th Cir. 2013) ("We conclude that substantial evidence supports the ALJ's determination that [the doctor's] opinion was inconsistent with the treatment record and thus not entitled to controlling weight."); *Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012). In addition, "[a] treating physician's own inconsistency may also undermine his opinion and diminish or eliminate the weight given his opinions," such as when the opinion is inconsistent with contemporaneous treatment notes. *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citation omitted). Similarly, an ALJ may discount the weight given to a treating physician's opinion if the treatment notes simply do not support the limitations endorsed in the opinion. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) (holding that a treating physician's opinion is entitled to less weight if it is unsupported by the physician's own records).

In this case, the ALJ correctly found the treating doctor's medical records simply did not support the limitations he imposed on the checklist form. Dr. Sagliocca's treatment notes provide absolutely no basis to support the extreme limitations he endorsed on the checkbox form. They consisted of nothing more than conclusory assertions. *See Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) ("It is appropriate . . . to disregard statements of opinion by a treating physician that consist[ ] of nothing more than vague, conclusory statements.") (internal quotation marks and citation omitted). In assessing the weight to be given to Dr. Sagliocca's opinion, the ALJ also properly considered that Dr. Sagliocca saw claimant only three times during a period of fewer than six months. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("In considering how much weight to give a treating physician's opinion, an ALJ must also consider the length of the treatment relationship and the frequency of examinations." (internal citation and quotation marks omitted)). Dr. Sagliocca's opinion is further entitled to less weight because it was conclusory and was provided by checking boxes on a form; Dr. Sagliocca failed to provide explanations on the form for the limitations he

10

found, even when asked to provide such explanations. He also failed to indicate that any of the conditions had lasted or would last for at least one year.[2] *See, e.g., Gregor v. Colvin*, 628 Fed. App'x 462, 463 (8th Cir. 2016) (finding the ALJ could discount a treating physician's opinion "because it was a conclusory checkbox form that cited no medical evidence; provided little to no elaboration; and expressed limitations that were not reflected in treatment notes or medical records") (citing *Anderson*, 696 F.3d at 793–94 (holding conclusory checkbox form had little evidentiary value when it provided little or no elaboration and cited no medical evidence)).

Claimant argues that the medical records support the limitations endorsed by Dr. Sagliocca, citing to a number of visits and notes by Drs. Louis Butera, D.O. and Charles Theofilos, both of whom treated claimant for her degenerative disc disease. (Doc. 16, at 9-12). This does not support claimant's argument. Indeed, neither of these doctors provided opinions suggesting claimant was as limited as Dr. Sagliocca claimed she was, and Drs. Butera and Theofilos were in a much better position to render an opinion on these matters, as Dr. Sagliocca was a kidney specialist.

Claimant argues the ALJ failed to properly consider the impact of claimant's obesity, which claimant urges "provides further support for Dr. Sagliocca's opinions." (Doc. 16, at 13). This argument has no merit for two reasons. First, one of the primary reasons for discounting Dr. Sagliocca's opinions was that he provided no explanation for the limitations he endorsed. Claimant here is simply attempting to provide post hoc support for an opinion that had no support when rendered. Second, the ALJ's decision shows that the ALJ did consider claimant's obesity. The ALJ found that claimant's obesity was a severe impairment. (AR 129). The ALJ further stated that she considered

---

[2] Although the ALJ did not explicitly identify all of the defects of Dr. Sagliocca's form opinion that I have identified, the Court may consider them in determining whether the ALJ's decision was consistent with other parts of the record. *See Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (holding that a reviewing court may consider the record as a whole in determining whether the ALJ's decision was consistent with the record).

11

the effect of claimant's obesity in determining claimant's limitations. (AR 134-35). The Eighth Circuit Court of Appeals has repeatedly held that an ALJ sufficiently considered a claimant's obesity where the ALJ specifically referred to the claimant's obesity in the decision. *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015); *Heino v. Astrue*, 578 F.3d 873, 881–882 (8th Cir. 2009).

In summary, I find there is substantial evidence in the record as a whole for the ALJ to have afforded Dr. Sagliocca's opinion little evidentiary weight. Therefore, I find the ALJ did not err when she declined to include Dr. Sagliocca's work-related limitations in claimant's residual functional capacity assessment.

### B. The ALJ's Evaluation of Examining Psychologist's Opinion

Claimant argues that the ALJ's residual functional capacity assessment was flawed because it did not incorporate limitations found by examining psychologist Dr. Ann Jacobs. (Doc. 16, at 15-19). Claimant argues the medical records support the limitations Dr. Jacobs found and that the ALJ failed to provide an adequate explanation for discounting those limitations. (*Id.*).

Dr. Ann Jacobs was a consulting examining source who saw claimant on one occasion in April 2011.[3] (AR 971-78). Dr. Jacobs noted that claimant had "no history of mental health services." (AR 975). During the examination, claimant stated that she did not want to be on medications while she was going to school, and did not want counseling because she did not want it "on [her] record." (*Id.*). Claimant described her daily activities, which included attending school, performing household chores, engaging in crafts and hobbies, and participating in a variety of social activities. (AR 976). Dr. Jacobs diagnosed claimant as having Major Depression, Recurrent Moderate; Panic Disorder without Agoraphobia; and Anxiety Disorder NOS. (AR 977). Dr. Jacobs based

---

[3] Dr. Jacobs provided her opinion in relation to claimant's unsuccessful 2011 application for disability benefits. The ALJ nevertheless considered the opinion as part of the record for the current application without reopening the prior determination. (AR 126).

the diagnosis on the single examination, based on the interview and observations, without performing any tests. In a summary, Dr. Jacob stated that claimant "has numerous physical health problems that have impaired her ability to work," but in relation to her mental health Dr. Jacobs stated that claimant "is able to manage her household," "performs most housekeeping chores," "attend[s] school," and "is capable of following simple rote instructions." (AR 978). Dr. Jacobs also opined that claimant's memory was "poor relative to her cognitive skills," her "stress tolerance is low," and she "experienc[es] some difficulties with social interaction." (*Id.*). Dr. Jacobs did not indicate, however, that any of claimant's mental health issues were severe or that they would impair her ability to work. The only arguably work-related limitation stated was that claimant was capable of following simple rote instructions, implying she may not be able to perform jobs requiring higher cognition.

The ALJ summarized Dr. Jacobs' examination and findings in some detail. (AR 133). The ALJ afforded minimal weight to Dr. Jacobs' opinion, however, because the ALJ found that "claimant's limitations on memory are inconsistent with the claimant successfully attending college and her ability to run a household, care for a grandchild, use the computer, and perform all activities of daily living." (*Id.*). The ALJ also noted that the records in the "case reveal[ ] no mental health restrictions recommended by a treating doctor." (AR 135).

Although an ALJ must consider medical opinion evidence in formulating a claimant's residual functional capacity, the ALJ has a duty to formulate the RFC based on all of the relevant, credible evidence of record. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). This includes a claimant's daily activities. *Owen v. Astrue*, 551 F.3d 792, 799 (8th Cir. 2008) (finding an ALJ properly discounted the opinions of a medical source because claimant's activities of daily living did not reflect the physical limitations found). Thus, an "ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the

13

government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). When determining the RFC, "'[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (quoting *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998)). Regardless of the source of the opinion, however, an ALJ must explain and give good reasons for the weight accorded to the various opinions. 20 C.F.R. § 404.1527(c)(2).

I find that substantial evidence supported the ALJ's decision to afford Dr. Jacobs' opinion minimal weight. Dr. Jacobs' records show that as of April 2011, claimant had no history of mental health services (AR 975) and claimant testified at the hearing in September 2013 that she had not had any mental health treatment in the last "couple of years" and was not then receiving any mental health treatment. (AR 162). In reaching her opinion regarding claimant's memory, Dr. Jacobs did not perform any testing of claimant's memory, but, rather, apparently relied solely on claimant's self-report. Dr. Jacobs' opinion that claimant had a poor memory was inconsistent with testing performed in September 2012. Dr. Louis Butera conducted a mental status examination and found claimant scored 29 out of 30 on a test of her orientation, immediate and remote recall, attention, calculation, and language, and scored 5 out of 5 on a clock-drawing task that tested her cognitive ability. (AR 1026-27). Dr. Butera noted that, although claimant presented with complaints of short-term memory loss, she performed well on cognitive testing. (AR 1027). Dr. Butera ultimately concluded that claimant had some memory loss. (AR 1027-29). A state agency psychologist reviewed the entire record, including Dr. Butera's records, and concluded that claimant did not have a severe mental impairment. (AR 268-70, 277-79, 289-91, 299-301). Finally, the ALJ's analysis of claimant's daily activities, particularly attending college, was inconsistent with severe memory or mental impairments.

14

In summary, I find there is substantial evidence in the record as a whole for the ALJ to have afforded Dr. Jacobs' opinion minimal weight. Therefore, I find the ALJ did not err when she declined to include Dr. Jacobs' work-related limitations in claimant's residual functional capacity assessment.

### C. The ALJ's Assessment of Claimant's Credibility

Claimant argues that the ALJ erred in finding claimant's subjective complaints were not fully credible. (Doc. 16, at 19-22). Claimant argues first that the ALJ's assessment of claimant's credibility was flawed because the ALJ's evaluation of Dr. Sagliocca's opinions was flawed, an argument I have already rejected. (Doc. 16, at 20). Claimant further asserts the ALJ's credibility assessment was flawed because the ALJ (1) failed to specifically identify discrepancies in the record; (2) asserted that claimant engaged in full activities when she did not; (3) placed too much weight on claimant's dated noncompliance with treatment; and (4) improperly asserted claimant's failure to lose weight impaired her credibility. (Doc. 16, at 20-21).

Although the ALJ found claimant's impairments to be severe, she found "claimant's statements concerning the intensity, persistence and limiting effects" of her symptoms were not credible. (AR 132). In making this determination, the ALJ specifically identified a number of discrepancies. The ALJ noted that claimant's testimony about limited babysitting she performed was not consistent with her earnings. (AR 131-32). Further, although claimant stated that her obesity caused her to feel tired and out of breath, she attended college, performed household chores, and shopped. (AR 132). The ALJ found claimant's statements about memory loss and difficulty with remembering and concentrating inconsistent with her attending college and obtaining passing grades. (*Id.*). The ALJ noted that claimant spent most of her days with her mother, who has Alzheimer's, and performed some tasks for her mother for which she was compensated. (*Id.*). The ALJ also noted that claimant was noncompliant with medications and treatment. For instance, the ALJ noted that in 2009, claimant did not

15

check her blood pressure or blood sugars, did not fill prescriptions, and had a long-standing history of non-compliance for diabetes and hypertension. (*Id.*). From 2009 through 2010, claimant attended only a few physical therapy sessions because of a vacation. (AR 132-33). In mid-2011, claimant told Dr. Jacobs that she did not take any antidepressant medications because she was concerned the medications would affect her college studies. (AR 133). In early 2013, claimant stated that she was "too busy" to meet with an advisor regarding her blood sugars. (AR 134). Regarding claimant's reported mental health issues, the ALJ noted that claimant had no ongoing mental health treatment. (*Id.*). The ALJ further noted that claimant's "sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems." (AR 135).

A court reviews an ALJ's credibility determination through an examination of the *Polaski* factors and the mandates of SSR 14-1p. Under the *Polaski* factors, an ALJ must consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

The Eighth Circuit Court of Appeals has explained that an ALJ is "not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment "even if every factor is not discussed in depth." *Dunahoo v. Apfel*,

16

241 F.3d 1033, 1038 (8th Cir. 2001) (internal citation omitted). "Although the ALJ may disbelieve a claimant's allegations of pain, credibility determinations must be supported by substantial evidence." *Jeffery v. Sec'y of Health & Human Servs.*, 849 F.2d 1129, 1132 (8th Cir. 1988) (internal citation omitted). "Moreover, the ALJ must make express credibility determinations and set forth the inconsistencies in the record that lead him to reject the claimant's complaints." (*Id.*). "Where objective evidence does not fully support the degree of severity in a claimant's subjective complaints of pain, the ALJ must consider all evidence relevant to those complaints." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001) (internal citation omitted).

Here, the ALJ found that the medical records and claimant's daily activities were inconsistent with the degree of severity of limitations reported by claimant. An ALJ may properly discount subjective complaints if inconsistencies exist in the record as a whole. *Polaski*, 739 F.2d at 1322; *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006); *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). Upon my own review of the records, I find there is support for the ALJ's conclusion. There is ample support in the record that claimant was non-compliant with taking medications and pursuing treatment not just in 2009, as claimant alleges, but throughout her medical history. The case law is clear that an ALJ may consider noncompliance with medical treatment as detracting from a claimant's credibility. *See, e.g.*, *Wright*, 789 F.3d at 854 (holding that a claimant's failure to comply with medical treatment diminished the claimant's credibility); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (same); *Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001) (same). Moreover, nowhere in the ALJ's decision did the ALJ discount claimant's credibility because claimant failed to lose weight, as claimant alleges. Finally, the ALJ properly considered claimant's daily activities for the purpose of assessing claimant's credibility. *Wagner*, 499 F.3d at 851-52 (noting that although a claimant need not be bedridden to be disabled, an ALJ may take into account the degree to which a claimant's daily activities are inconsistent with

17

the alleged severity of impairments). There is ample support in the record for the ALJ to have concluded that claimant's daily activities were inconsistent with the physical and mental limitations she claimed to have. Whether one describes claimant as engaging in "full activities" or not, the fact is that claimant engaged in many activities that were inconsistent with someone claiming total disability: claimant cared for her mother, attended school, performed household chores, engaged in crafts and hobbies, and participated in a variety of social activities. The only task she said she could not perform was mopping.

In short, this is not a case where an ALJ made broad, vague, and conclusory findings regarding a claimant's credibility. The ALJ's basis for discounting claimant's credibility was detailed and specific, with references to the record throughout. Although the Court could reach a different credibility finding, I find there is substantial evidence in the record as a whole to support the ALJ's credibility findings in this case. Where an ALJ gives good reason for discrediting a claimant's testimony, a reviewing court should defer to the ALJ's credibility findings. *Halverson v. Astrue*, 600 F.3d 922, 931-33 (8th Cir. 2010). Accordingly, I recommend the Court find the ALJ did not err in her credibility findings.

## VI. CONCLUSION

For the reasons set forth herein, I find the ALJ acted well within the zone of choice within which the Commissioner may act. *Culbertson*, 30 F.3d at 939. Therefore, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of

the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

      **IT IS SO ORDERED** this 17th day of July, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa