# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

MARY F. JOHNSON,

          Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

          Defendant.

No. 16-CV-2026-LTS

**MEMORANDUM OPINION AND
ORDER ON REPORT AND
RECOMMENDATION**

---

## I.    INTRODUCTION

This case is before me on a Report and Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. *See* Doc. No. 22. Judge Williams recommends that I affirm the decision of the Commissioner of Social Security (the Commissioner) denying plaintiff Mary F. Johnson's application for Social Security disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 et seq. (Act).

Johnson filed timely objections (Doc. No. 23) to the R&R, and the Commissioner responded on August 22, 2017 (Doc. No. 25). The procedural history and relevant facts are set forth in the R&R and are repeated herein only to the extent necessary.

## II.    APPLICABLE STANDARDS

### A.    *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but [it does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th

Cir. 2008)). This is true "even if [the court] might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005).

**B.      *Review of Report and Recommendation***

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## III.    THE R&R

Johnson alleged disability due to degenerative disc disease, obesity, diabetes and high blood pressure.  AR 129.  In support of her claim, Johnson submitted residual functional capacity (RFC) opinions drafted by her treating physician, Gennaro Sagliocca, M.D., and by an examining psychologist, Ann L. Jacobs, Ph.D.  At issue are the ALJ's evaluation of those opinions, as well as whether ALJ erred in discounting Johnson's subjective allegations.

After setting forth the relevant facts, Judge Williams summarized the ALJ's assessment of Dr. Sagliocca's opinion as follows:

> Dr. Sagliocca is a kidney specialist and saw claimant on only three occasions in the course of fewer than six months, between October 2012 and March 2013.  (AR 1013-19, 1097-98).  Dr. Sagliocca's records, including laboratory reports, consist of nine pages.  Dr. Sagliocca diagnosed claimant as having renal kidney disease.  (AR 1015, 1097, 1099).  On her last visit to Dr. Sagliocca on March 28, 2013, Dr. Sagliocca noted that claimant was "doing fairly well" and had "no other complaints," although she did "complain of some back pain."  (AR 1097).  During the same visit, claimant asked Dr. Sagliocca "to fill out some disability papers."  (*Id.*).  Dr. Sagliocca filled out a disability questionnaire form, populated by checkboxes, supplied by claimant's attorney.  In response to question 3, asking Dr. Sagliocca to describe claimant's symptoms, it appears that he wrote "back pain" and an indecipherable word.  (AR 1099).  Dr. Sagliocca did not answer the question: "Have the patient's impairments lasted or can they be expected to last at least twelve months?"  (AR 1100).

4

Dr. Sagliocca then checked a number of boxes assessing claimant with the following limitations:

| | |
|---|---|
| Sit and stand continuously | 45 minutes |
| Stand | 15 minutes |

In an 8 hour day the patient can:
>        sit 2 hours;
>        stand 45 minutes, and,
>        walk 30 minutes or less

Needs periods of walking in an 8 hour work day
Needs to shift positions at will from sitting, standing and walking
Cannot get through an 8 hours working day without lying down
While sitting, needs to elevate legs
Should never lift or carry any weight
Can only occasionally grasp, turn, and twist objects, engage in fine manipulation, and reach.

(AR 1100-01). When instructed to explain these answers, Dr. Sagliocca left the space blank. (AR 1101). Dr. Sagliocca went on to check boxes indicating claimant could only occasionally bend and twist at the waist and would have "difficulty squatting & stooping." (AR 1102). Finally, Dr. Sagliocca checked the box indicating that claimant would be absent "[m]ore than twice a month" due to her impairments or treatment. (*Id.*).

In considering Dr. Sagliocca's opinion, the ALJ "accorded [it] little evidentiary weight." (AR 135). The ALJ explained the basis for the weight she accorded the opinion. The ALJ noted that Dr. Sagliocca treated claimant for her chronic kidney disease, which Dr. Sagliocca's records showed was stable over the course of the three appointments between October 2012 and March 2013. (*Id.*). The ALJ noted that Dr. Sagliocca's records showed that claimant was "neurologically intact and not endorsing symptoms related to her kidney disease but more attributable to back pain and diabetic neuropathy." (*Id.*). The ALJ noted that during the last visit, Dr. Sagliocca documented that claimant was "doing fairly well." (*Id.*). The ALJ further noted that Dr. Sagliocca's opinion does not "specify which diagnosis/symptoms correspond to specific limitations in functioning." (*Id.*). Ultimately, the ALJ found Dr. Sagliocca's opinion "quite conclusory, providing very little explanation of the evidence relied on in forming that opinion," and that it was inconsistent with claimant's own statements about what she could do. (*Id.*). In contrast, the ALJ gave

substantial weight to the opinions of state consulting physicians because the limitations they identified were "well supported with specific references to medical evidence," and were "internally consistent as well as consistent with the evidence as a whole." (AR 136).

Doc. No. 22 at 8-9. Judge Williams found that Dr. Sagliocca's restrictions are not supported by either his own medical records or by the remainder of Johnson's medical records. *Id.* at 10-11. As a result, Judge Williams determined that the ALJ gave good reasons, supported by substantial evidence, for affording little weight to Dr. Sagliocca's opinions. *Id.* at 11.

Turning to Dr. Jacobs' medical opinion, Judge Williams summarized the ALJ's analysis as follows:

Dr. Ann Jacobs was a consulting examining source who saw claimant on one occasion in April 2011. (AR 971-78). Dr. Jacobs noted that claimant had "no history of mental health services." (AR 975). During the examination, claimant stated that she did not want to be on medications while she was going to school, and did not want counseling because she did not want it "on [her] record." (*Id.*). Claimant described her daily activities, which included attending school, performing household chores, engaging in crafts and hobbies, and participating in a variety of social activities. (AR 976). Dr. Jacobs diagnosed claimant as having Major Depression, Recurrent Moderate; Panic Disorder without Agoraphobia; and Anxiety Disorder NOS. (AR 977). Dr. Jacobs based the diagnosis on the single examination, based on the interview and observations, without performing any tests. In a summary, Dr. Jacob stated that claimant "has numerous physical health problems that have impaired her ability to work," but in relation to her mental health Dr. Jacobs stated that claimant "is able to manage her household," "performs most housekeeping chores," "attend[s] school," and "is capable of following simple rote instructions." (AR 978). Dr. Jacobs also opined that claimant's memory was "poor relative to her cognitive skills," her "stress tolerance is low," and she "experienc[es] some difficulties with social interaction." (*Id.*). Dr. Jacobs did not indicate, however, that any of claimant's mental health issues were severe or that they would impair her ability to work. The only arguably work-related limitation stated was that claimant was capable of following simple rote instructions, implying she may not be able to perform jobs requiring higher cognition.

The ALJ summarized Dr. Jacobs' examination and findings in some detail. (AR 133). The ALJ afforded minimal weight to Dr. Jacobs' opinion, however, because the ALJ found that "claimant's limitations on memory are inconsistent with the claimant successfully attending college and her ability to run a household, care for a grandchild, use the computer, and perform all activities of daily living." (*Id.*). The ALJ also noted that the records in the "case reveal[ ] no mental health restrictions recommended by a treating doctor." (AR 135).

Doc. No. 22 at 13-14. Given Johnson's lack of mental health treatment, the inconsistencies between Johnson's reported activities and Dr. Jacobs' recommendation, and the fact that Dr. Jacobs formed her opinions after just one interview with no objective testing, Judge Williams found that the ALJ properly weighed Dr. Jacobs' medical opinion. *Id.* at 14-15. Judge Williams noted that the state agency medical consultants evaluated each of the impairments that the ALJ found severe, along with extensive medical records provided by multiple treating doctors. Judge Williams found that the state agency RFC assessments were consistent with the ALJ's. *Id.* at 11-12. As a result, Judge Williams concluded that substantial medical evidence in the record as a whole supported the ALJ's RFC determination. *Id.* at 18.

Finally, Judge Williams considered the ALJ's rejection of Johnson's subjective complaints:

Although the ALJ found claimant's impairments to be severe, she found "claimant's statements concerning the intensity, persistence and limiting effects" of her symptoms were not credible. (AR 132). In making this determination, the ALJ specifically identified a number of discrepancies. The ALJ noted that claimant's testimony about limited babysitting she performed was not consistent with her earnings. (AR 131-32). Further, although claimant stated that her obesity caused her to feel tired and out of breath, she attended college, performed household chores, and shopped. (AR 132). The ALJ found claimant's statements about memory loss and difficulty with remembering and concentrating inconsistent with her attending college and obtaining passing grades. (*Id.*). The ALJ noted that claimant spent most of her days with her mother, who

has Alzheimer's, and performed some tasks for her mother for which she was compensated. (*Id.*). The ALJ also noted that claimant was noncompliant with medications and treatment. For instance, the ALJ noted that in 2009, claimant did not check her blood pressure or blood sugars, did not fill prescriptions, and had a longstanding history of non-compliance for diabetes and hypertension. (*Id.*). From 2009 through 2010, claimant attended only a few physical therapy sessions because of a vacation. (AR 132-33). In mid-2011, claimant told Dr. Jacobs that she did not take any antidepressant medications because she was concerned the medications would affect her college studies. (AR 133). In early 2013, claimant stated that she was "too busy" to meet with an advisor regarding her blood sugars. (AR 134). Regarding claimant's reported mental health issues, the ALJ noted that claimant had no ongoing mental health treatment. (*Id.*). The ALJ further noted that claimant's "sporadic work history raises some questions as to whether the current unemployment is truly the result of medical problems." (AR 135).

Doc. No. 22 at 15-16. After examining the basis for the ALJ's decision, Judge Williams addressed the *Polaski* factors and considered whether the ALJ fully considered Johnson's subjective complaints. *Id.* at 16. Judge Williams found that the ALJ gave good reasons for discounting Johnson's subjective complaints, including inconsistencies between the medical record and her report of daily activity and her noncompliance with her prescribed course of treatment and her work history. As a result, Judge Williams found substantial evidence in the record as a whole to support the ALJ's findings. *Id.* at 18.

## IV. DISCUSSION

Johnson objects to Judge Williams' findings that (1) the ALJ properly weighed the medical opinions of Drs. Sagliocca and Jacobs, and (2) the ALJ properly discounted Johnson's testimony. I review those issues de novo.

### A. Medical Opinions

Johnson argues that the ALJ failed to give proper weight to Dr. Sagliocca's and Dr. Jacobs' medical opinions. She contends that both opinions were materially different

from those of the state agency consultants and consistent with the medical record as a whole. Doc. No. 16 at 6.

An opinion by a treating physician must be given "controlling weight" if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must give "good reasons . . . for the weight [the ALJ gives a] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). By contrast, a consulting expert's opinion is generally entitled to less weight. Normally, the opinion of a one-time consulting examiner will not constitute substantial evidence, particularly where the opinion is inconsistent with the record as a whole. *Cantrell v. Apfel,* 231 F.3d 1104, 1107 (8th Cir.2000); *see also Cowles v. Colvin*, 102 F. Supp. 3d 1042, 1055 (N.D. Iowa 2015).

It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley v. Shalala*, 52 F.3d 784, 785–87 (8th Cir. 1995)). However, any physician's conclusion regarding a claimant's RFC addresses an issue that is reserved for the ALJ. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

The ALJ's RFC finding must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of limitations," but "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 931-31 (8th Cir. 2016). If the ALJ's RFC is within the "zone of choice" permitted by the evidence,

the court must affirm. *Culbertson*, 30 F.3d at 939. Based on my de novo review, I find no error in the ALJ's treatment of Drs. Sagliocca and Jacobs' medical opinions.

### 1. *Dr. Sagliocca.*

Dr. Sagliocca saw Johnson three times in 2013. AR 1100-02, 1015-16, 1097-98. During the third visit, at Johnson's request, Dr. Sagliocca filled out a prepared form regarding Johnson's limitations. AR 1100-02. The form is sparse and largely illegible. *Id.* Dr. Sagliocca did not indicate whether Johnson's symptoms had lasted more than 12 months and provided no explanation for the limitations that he checked on the form. *Id.* It is difficult to understand how Dr. Sagliocca reached those opinions, as he saw Johnson only three times, for the limited purpose of treating her diabetic nephropathy. There is no evidence in the record to suggest that Dr. Sagliocca conducted any functional testing of Johnson's ability to sit, stand, or lift various weights. There is no explanation in the record, from Dr. Sagliocca or any other source, to explain why Johnson would need to sit with her feet elevated. Dr. Sagliocca's records are sparse, and likely do not capture the entirety of his interactions with Johnson, but there is nothing to suggest that he recommended she limit her activities other than through this check-box form.

The ALJ afforded Dr. Sagliocca's opinions "little evidentiary weight," finding the medical record and Johnson's testimony do not support the work limitations he endorsed. AR 135. Specifically, the ALJ stated that Dr. Sagliocca's opinions were not supported by his own treatment of Johnson: "Despite a fairly uneventful treating relationship, and only three outpatient visits, Dr. [Sagliocca's] opinion is so limiting that it basically restricts the claimant to a state of doing virtually nothing all day." *Id.* The ALJ also noted that Johnson's other treating physicians were either silent or less restrictive regarding Johnson's functional capacity. AR 132-35. Like Judge Williams, I find that substantial evidence supports the ALJ's decision to reject Dr. Sagliocca's limitations.

Although there is some medical evidence to support exertional limitations, nothing in the record suggests limitations as extensive as Dr. Sagliocca's. Johnson argues that Dr. Sagliocca's limitations are supported by the treatment records of Dr. Charles S. Theofilos, M.D. Doc. No. 23 at 4. Specifically, Johnson objects that "the Magistrate Judge seems to believe support for Dr. Sagliocca's opinions must be found within his statement or his treatment records. On the contrary, the record must be evaluated as a whole to determine whether the treating physician's opinion should control." *Id.* (citing *Tilley v. Astrue*, 580 F.3d 675, 679-90 (8th Cir. 2009); *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005)). In my de novo review of the R&R, I do not find that Judge Williams improperly limited his review to Dr. Sagliocca's medical records. Judge Williams found, and I agree, that none of Johnson's doctors suggested that she was as limited as Dr. Sagliocca opines.

Objective evaluation of Johnson's lumbar disc issues demonstrates that her range of motion was only moderately impaired in May of 2011. AR 980-84, 987. Johnson was diagnosed with degenerative disc disease in November 2012, after an MRI revealed disc bulges at L4-L5 and L5-S1, along with facet joint arthritis throughout the lumbar spine. AR 1082. Johnson went without treatment for her lower back pain until January 2013, when she sought treatment with Dr. Theofilos. AR 114-17. Dr. Theofilos prescribed conservative treatment, including weight loss and physical therapy; however, there are no records of physical therapy treatment in the administrative record for this time period. By April of 2013, Dr. Theofilos was recommending surgery for Johnson's degenerative disc disease. AR 1105-06. Dr. Sagliocca had his final encounter with Johnson at this time, and wrote the above-described opinion. AR 1088. However, after moving to Iowa Johnson explained she declined surgery due to potential side effects. AR 1148. She was referred to a pain clinic where further conservative treatment was performed. AR 1167, 1172-76, 1193, 1244. A discography in May of 2014 was negative. AR 1176. Throughout this period, Johnson's gait and stance were normal, in

spite of pain. To date, it does not appear that Johnson has reconsidered or requested surgery.

Johnson also argues that her obesity supports Dr. Sagliocca's opinions. Doc. No. 16 at 13; Doc. No. 23 at 5-6. It is certainly true that the effects of obesity may make an otherwise mild condition severe. "It is one thing to have a bad knee; it is another thing to have a bad knee supporting a body mass index in excess of 40." *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *see also Webster v. Astrue*, 628 F. Supp. 2d 1028, 1030-31 (S.D. Iowa 2009) (remanding where ALJ failed to consider "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment" and the effect of obesity on other conditions in the aggregate). Johnson was about 5' 2.5" tall, and weighed about 258 pounds, putting her Body Mass Index (BMI) at approximately 48.8. AR 1222. It seems obvious that Johnson's obesity would strain her lumbar spine, and that the pain in her lumbar spine would in turn discourage her from exercising. Johnson testified to the same during the September 11, 2014, hearing before the ALJ, stating that she would "lean forward" when sitting or standing to keep weight off of her lower back. AR 164, 171. Johnson stated that her weight affects her ability to walk, sit, stand and sleep. AR 170-71. However, these symptoms, as reported by Johnson, do not provide support for Dr. Sagliocca's extreme limitations. Further, Johnson's obesity is consistent with and supports the RFC found by the ALJ.

As explained above, the matter of RFC is reserved to the ALJ. Here, the ALJ found that Johnson had the RFC to perform "sedentary work" with some limitations. AR 130. The ALJ gave good reasons to discount Dr. Sagliocca's opinions. Dr. Sagliocca's own treating records provide no support for the limitations that he endorsed on the attorney-provided checklist form. *Gregor v. Colvin*, 628 F. App'x 462, 463 (8th Cir. 2016) (ALJ may discount a treating physician's vague, conclusory and unsupported opinions which were provided on a checkbox form and inconsistent with the treatment

record); *see also Anderson v. Astrue*, 696 F.3d 790, 793-94 (8th Cir. 2012); *Strongson v. Barnhart*, 361 F.3d 1066 1070 (8th Cir. 2004). Dr. Sagliocca saw Johnson only three times during the six month period he was treating her. *Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) ("[The] ALJ must consider the length of treatment relationship and the frequency of examinations."). Further, Dr. Sagliocca's RFC opinion was outside of his area of expertise (kidney disease), and based on conditions for which he was not treating Johnson. Each of these factors is a "good reason" to discount Dr. Sagliocca's restrictive RFC. Further, the ALJ's finding that Johnson had the RFC to perform sedentary work is not entirely inconsistent with Dr. Sagliocca's opinion, although the ALJ imposed less restrictions overall. The finding that Johnson is restricted to sedentary work is clearly supported by the evidence.

Finally, Johnson objects that Judge Williams "relies on grounds not given by the ALJ to discount Dr. Sagliocca's opinions" to find that the ALJ properly rejected Dr. Sagliocca's opinion. Doc. No. 23 at 4. "[A] reviewing court may not uphold an agency decision based on reasons not articulated by the agency," when "[the] agency fails to make a necessary determination of fact or policy" upon which the court's alternative basis is premised. *Healtheast Bethesda Lutheran Hosp. and Rehab. Ctr. v. Shalala,* 164 F.3d 415, 418 (8th Cir.1998) (discussing the limitations on the rule made by the Supreme Court in *S.E.C. v. Chenery Corp.,* 318 U.S. 80 (1943)). However, this rule is tempered by the requirement that a reviewing judge consider the record as a whole in determining whether the ALJ's decision was consistent with the record. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). When an ALJ's opinion has the support of substantial evidence on the record as a whole, a court may not overturn it. *Baldwin*, 349 F.3d at 555. Based on my review of the record, I find that Judge Williams did not go beyond the ALJ's reasoning, and that the ALJ's decision to reject Dr. Sagliocca's opinion was supported by substantial evidence. Because I find no error with the ALJ's decision, Johnson's objection is overruled.

## 2.    *Dr. Jacobs*

Johnson argues that the ALJ failed to give proper weight to Dr. Jacobs' medical opinions.  Doc. No. 16 at 15-17.  Dr. Jacobs wrote that Johnson was "capable of following simple rote instructions."  AR 978.  This statement may imply she can do no more than follow rote instructions, which would support a finding of "disabled" by limiting Johnson to non-skilled work.[1]  AR 183, Doc. No. 16 at 16-17.  Based on my de novo review, I find no error with the ALJ's decision to reject Dr. Jacobs' opinions.

Dr. Jacobs examined Johnson on April 27, 2011, and is thus a one-time examining source under the regulations.  20 C.F.R. § 404.1527(b)-(c).  During this examination, it was noted that Johnson's primary care doctor had prescribed Citalopram, an antidepressant, approximately four years previously, although Johnson had not received ongoing counseling and had not been taking her medication.  AR 975.  Johnson stated that she did not seek counseling as she did not want that "on [her] record," and declined medication because she believed it would interfere with her studies.  *Id.*  Dr. Jacobs interviewed Johnson regarding her social history, her everyday activities and her health problems.  AR 975-76.  Johnson informed Dr. Jacobs that she was enrolled in school part-time but that her motivation and her grades were slipping.  AR 975.  Johnson was recently divorced and had no insurance.  *Id.*  Regarding Johnson's mental state, Dr. Jacobs wrote:

> Mary Johnson is alert and oriented to all spheres.  Speech is soft in volume but otherwise normal in form, pace and progress.  Content is relevant.  She presents in depressed mood with restricted range of affect.  She is not anxious.  Perceptual abnormalities are denied.  Amount and rate of thought production are average.  There are no loose associations.

---

[1] Johnson turned 51 while her case was pending, making her a person "closely approaching advanced age."  20 C.F.R. § 404.1563(d).  During the September 11, 2014, hearing, the vocational expert testified that if limited to unskilled jobs, Johnson would be unable to perform past work.  AR 183.  If unable to perform past work and limited to unskilled jobs, Johnson is disabled as of her 51st birthday.  20 C.F.R. Pt. 404, Subpt. P, App. 2.

There is no tangential thinking. There is no indication of severe thinking impairment. . . . Mrs. Johnson demonstrates some weakness in concentration. She is able to recall three of three objects immediately, one of three after five minutes with interference. She can repeat four digits forward and three backward. . . . Memory is weak relative to her overall cognitive functioning. Energy level and speed of task performance are low average.

AR 977. Based on her evaluation of Johnson's mental status and self-reported symptoms, Dr. Jacobs diagnosed her with major depression, recurrent moderate panic disorder without agoraphobia and anxiety disorder. AR 977. Dr. Jacobs also concluded that Johnson's memory is "poor relative to her cognitive skills" and that she is "capable of following simple rote instructions." AR 978. Dr. Jacobs opined that Johnson's stress tolerance was low and that she would benefit from counseling. *Id.*

The rest of the medical record is consistent with a diagnosis of at least mild depression. Although the ALJ found that Johnson "has had no ongoing treatment for mental health complaints" and therefore "any symptoms or issues she may or may not have experienced in this regard have not been [so] significant to result in problems with her daily functioning," AR 134, the record suggests that she at least sought medicinal assistance with her depression from her various treating doctors. In September 2012, Johnson was examined by Luis Butera, D.O., who performed his own evaluation of her cognitive abilities and mental state. AR 1026-27. Dr. Butera found that "[w]hile the patient presents with concerns regarding short-term memory she did well on cognitive testing today. My impression is that there is a strong element of depression which may be impacting her cognitively." AR 1027. As a result, Dr. Butera prescribed Nortriptyline, an anti-depressant. *Id.*

Once Johnson moved to Iowa and established treatment here, it is apparent throughout the medical record that Johnson was compliant with continuing anti-depressant medications (Sertraline) through 2014. AR 1104, 1109, 1112, 1118, 1141, 1145, 1150-52, 1193, 1206, 1235, 1241-43. Additionally, although Dr. Jacobs did not have access

to this information at the time of her opinion, there is objective medical evidence in the record to account for Johnson's memory issues. A brain MRI in October 2012 revealed atrophy and microvascular ischemic changes. AR 1045. The neurologist interpreting these findings stated that the MRI was consistent with "chronic left anterior ganglionic lacunar infarct." Johnson had suffered a stroke[2] and was receiving reduced blood flow to portions of her brain. AR 1037. At the same time, Dr. Butera remarked that Johnson was going untreated for sleep apnea, a condition which deprives the brain of oxygen while the patient is sleeping. AR 1039.

The ALJ gave Dr. Jacobs' opinions "minimal weight . . . in that the claimant's limitations in memory are inconsistent with the claimant successfully attending college and her ability to run a household, care for a grandchild, use the computer, and perform all activities of daily living." AR 133. The ALJ also noted that there were no mental health restrictions recommended by a treating doctor, and that Johnson was not treated by a mental health professional after 2012. AR 135. The ALJ imposed no mental health restrictions in Johnson's RFC. AR 130. As stated above, the RFC determination is reserved to the ALJ, and it is the ALJ's job to weigh conflicting evidence and resolve inconsistencies between the various physicians in the record.

Johnson makes several arguments that the ALJ erred in discounting Dr. Jacobs' opinions. First, Johnson disputes that her daily activities were inconsistent with Dr. Jacobs' conclusions. Johnson argues that Dr. Jacobs was aware of Johnson's daily activities in 2011 and reached her conclusions with this information in mind. Doc. No. 16 at 18-19. Johnson contends that second-guessing Dr. Jacobs' conclusions, without more, amounts to the ALJ "playing doctor." *Id.* (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009); *Hartmann v. Astrue*, 592 F. Supp. 2d 1100, 1104 (S.D.

---

[2] There is no record of hospitalization for a stroke in the record; however, various providers mentioned a history of stroke in 2011. AR 101, 1112, 1186.

Iowa 2009). Second, Johnson argues that the fact that she was not receiving counseling should not count against her, as she had no insurance and would be required to pay out of pocket for any counseling services. Finally, Johnson argues that the silence of her other treating physicians on mental limitations is not substantial evidence in support of a finding of "not disabled." Doc. No. 23 at 8 (citing *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011).

I agree with Judge Williams that there is substantial evidence in the record to support the ALJ's decision to omit mental health restrictions from the RFC. Throughout the medical record, Dr. Jacobs – a one-time examiner – is the only physician to describe Johnson's depression as "major." AR 977. Although Dr. Butera suggested that Johnson would benefit from counseling, Johnson has received only medicinal treatment for her depression. Further, although several of Johnson's treating physicians have noted her concerns about memory loss, no course of treatment or functional limitations on her day-to-day activities have been prescribed.

The silence of Johnson's physicians regarding her mental health may not be substantial evidence to support the rejection of Dr. Jacobs' medical opinions, but the conservative course of treatment for her depression and memory loss is. Finally, Johnson's daily activities at the time of Dr. Jacobs' examination are inconsistent with disabling conditions. Although some daily activities such as cooking, cleaning, watching TV and shopping for groceries are "minimal daily activities" consistent with chronic mental disability, *Pates-Fries*, 564 F.3d at 947, Johnson was also attending school during this time. In 2013, Johnson graduated with an associates' degree in business financing. AR 156. There is little in the record to indicate that Johnson's mental health has deteriorated further since Dr. Jacobs' and Dr. Butera's initial assessments.

There is substantial evidence in the record as a whole to support the ALJ's treatment of Dr. Jacobs' opinions. The ALJ's RFC determination is within the "zone of choice" permitted by the evidence. Johnson's objection on this issue is overruled.

**B.    Johnson's Credibility**

Johnson's final argument is that the ALJ erred in discounting her subjective complaints of pain without adequately identifying inconsistencies within the record. Doc. No. 16 at 19-22.  If Johnson's subjective complaints are taken as true, she argues, her complaints support a finding of "disabled."  *Id.* at 22.  Johnson further argues that Judge Williams erred in finding substantial support of the evidence for the ALJ's credibility determination, stating that Judge Williams "failed to recognize the strength of the objective evidence," and overlooked the ALJ's failure to identify inconsistencies in the record as a whole.  Doc. No. 23 at 9.

A court reviews an ALJ's credibility determination through an examination of the *Polaski* factors and the mandates of SSR 14-1p, 2014 WL 1371245 (Apr. 3, 2014).  *Polaski* requires the ALJ to consider the "claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions."  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Although the ALJ may not have addressed each of these factors by name, the October 2014 hearing decision reflects that the ALJ fully considered the above factors. Regarding Johnson's prior work record, the ALJ found that Johnson's work history was "sporadic."  AR 135.  Specifically, "[i]n only four years since 1997 has the claimant made substantial gainful activity level earnings."  *Id.*  The ALJ also found that Johnson "worked after the alleged disability onset date," although her earnings "did not rise to the level of substantial gainful activity."  AR 129.  Johnson's earnings for that year were not consistent with the reported work activity prior to the alleged onset of

disability. *Id.* The ALJ may consider these inconsistencies and the lack of consistent work in deciding to reject Johnson's subjective complaints. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999).

The ALJ expressly found that Johnson's daily activities were inconsistent with both her reported mental and physical limitations. As discussed above, the fact that a claimant is capable of performing "minimal daily activities" is not inconsistent with disability. However, Johnson attended school full time and part time during the period for which she alleged disability. The ALJ found that she had "full activities . . . she babysat her classmates' children on a part time basis, and also cared for her mother with Alzheimer's disease. [Johnson] lived independently and was able to perform household chores." AR 135. The ALJ may properly consider these factors, as they are consistent with sedentary work. *Stewart v. Sec'y of Health & Human Servs.*, 957 F.2d 581 (8th Cir. 1992).

As to the duration, frequency and intensity of her pain, Johnson testified that her obesity made her feel "tired and out of breath" and that she could only sit or stand for 30 minutes before she needed to shift positions to alleviate her pain. AR 132. Johnson's range of motion was only slightly limited and her pain was attributed to her degenerative disc disease rather than to her herniated disc. AR 1169-70, 1257. Johnson also testified to migraine headaches four days a week; however, she never reported migraine headaches to any of her physicians. AR 168. These factors do not generally support the presence of disabling limitations and the ALJ may properly consider them in rejecting Johnson's subjective complaints. *See Armijo v. Astrue*, 385 F. App'x. 789, 794-95 (10th Cir. 2010) (possible herniated disc, decreased range of motion, mild radiculopathy and marked tenderness and spasms did not support disabling limitations).

The ALJ noted that at times, Johnson was not compliant with her diabetes and hypertension treatments, and she failed to lose weight as recommended by her physicians. AR 135, 215-16. Although the incidents of non-compliance are minor, and

attributable to a lack of insurance, the ALJ is permitted to consider these factors in support of an adverse credibility finding. *Clevenger v. Soc. Sec. Admin.*, 567 F.3d 971, 976 (8th Cir. 2009). There is substantial evidence in support of the ALJ's credibility determination.

Johnson further objects that the ALJ did not identify specific inconsistencies in the record prior to evaluating her credibility. Doc. No. 16 at 20 (citing *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008); *Lewis*, 353 F.3d at 647. Where an ALJ discounts a claimant's subjective complaints, the ALJ must "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 518 F.3d at 983 (citing *Lewis*, 353 F.3d at 647). Johnson specifically objects to Judge Williams' statement:

> [A]n ALJ is 'not required to discuss methodically each *Polaski* consideration, so long as he acknowledged and examined those considerations before discounting [claimant's] subjective complaints.' *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 200) (internal citation omitted). If the ALJ gives a good reason for discrediting a claimant's credibility, then the court will defer to the ALJ's judgment 'even if every factor is not discussed in depth.' F.3d 1033, 1038 (8th Cir. 2001) (internal citation omitted).

Doc. No. 23 at 17. Johnson's objection goes to the form of the ALJ's opinion rather than the substance. Although the vague reference to "some discrepancies" in the opinion could lead to a finding that the ALJ failed to identify specific inconsistencies in the record, this argument fails to consider the opinion as a whole. As discussed above, there are discrepancies in Johnson's reported limitations, work history and subjective symptoms. The ALJ detailed each of these inconsistencies individually, apart from the vague sentence that Johnson has focused in on. It appears that the vague sentence is a reference to the inconsistencies specified elsewhere. Regardless, one vague sentence does not negate the remainder of the ALJ opinion. I find no error in the R&R. Johnson's objection is overruled.

## V.    CONCLUSION

For the reasons set forth herein:

1.      Plaintiff Mary Johnson's objections (Doc. No. 23) to the Report and Recommendation (Doc. No. 22) are **overruled**.

2.      I **accept** Chief United States Magistrate Judge C.J. Williams' Report and Recommendation without modification.  *See* 28 U.S.C. § 636(b)(1).

3.      Pursuant to Judge Williams' recommendation:

    a.      The Commissioner's determination that Johnson was not disabled is **affirmed**; and

    b.      Judgment shall enter against Johnson and in favor of the Commissioner.

**IT IS SO ORDERED.**

**DATED** this 8th day of September, 2017.

_____
Leonard T. Strand, Chief Judge